USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/26/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

ROBERT WILLIAMS,

              Petitioner,

  -against-

WILLIAM LEE, Superintendent of Green Haven
Correctional Facility,

              Respondent.
----------------------------------------------------------------X

14-cv-597 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Robert Williams ("Petitioner"), proceeding *pro se*, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Following a jury trial, Petitioner was found guilty of first-degree manslaughter and third-degree criminal possession of a weapon. Currently pending before the Court is a Report and Recommendation ("R & R") issued by Magistrate Judge Judith C. McCarthy pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b), recommending that the petition be denied. For the following reasons, the Court adopts the R & R, and the petition is DENIED.

## BACKGROUND

The Court presumes familiarity with the factual and procedural background of this case, the underlying criminal proceeding, and Petitioner's collateral state challenges.

Following Petitioner's convictions and the exhaustion of his state court appeals, he timely filed the instant petition for a writ of habeas corpus on January 23, 2014, Petitioner argued that habeas corpus should be granted because the trial court (1) violated his due process rights by admitting statements that he made involuntarily, unknowingly, and unintelligently to the police; (2) violated the Sixth Amendment by allowing "clearly prejudicial hearsay" testimony from the

victim's mother and sister relating to previous violence between Petitioner and the victim; and (3) denied him his right to a fair trial because the court empaneled a biased jury and later provided prejudicial jury instructions. (Pet'r's Pet. for Habeas Corpus, pp. 5 – 30, ECF No. 1.)

On December 4, 2017, Judge McCarthy issued her R & R recommending that this Court deny the petition, finding that on Petitioner's first claim, the state court's admission of his statements to law enforcement was not unreasonable and that Petitioner's second and third claims were procedurally barred. Petitioner filed objections on January 5, 2018, after the December 18, 2017 deadline to file objections. (ECF No. 17.) The Court deemed the objections to be filed *nunc pro tunc*. (ECF No. 16.)

**STANDARDS OF REVIEW**

I. **Habeas Petition to Review a State Court Decision**

"Habeas review is an extraordinary remedy." *Bousley v. United States*, 523 U.S. 614, 621 (1998). When a claim has been adjudicated on the merits in a state court proceeding, a prisoner seeking habeas relief must establish that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (d)(2); *Cousin v. Bennett*, 511 F.3d 334, 337 (2d Cir. 2008). A state court's findings of fact are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997).

## II. Magistrate Judge's Report and Recommendation

A magistrate judge may "hear a pretrial matter [that is] dispositive of a claim or defense" if so designated by a district court. Fed. R. Civ. P. 72(b)(1); *accord* 28 U.S.C. § 636(b)(1)(B). In such a case, the magistrate judge "must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1); *accord* 28 U.S.C. § 636(b)(1). Where a magistrate judge issues a report and recommendation,

> [w]ithin fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b); *accord* Fed. R. Civ. P. 72(b)(2), (3). However, "[t]o accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) (internal quotation marks omitted); *accord Feehan v. Feehan*, No. 09-CV-7016(DAB), 2011 WL 497776, at *1 (S.D.N.Y. Feb. 10, 2011); *see also* Fed. R. Civ. P. 72 advisory committee note (1983 Addition, Subdivision (b)) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

## HABEAS PETITION AND MAGISTRATE JUDGE'S FINDINGS

Petitioner's habeas petitioner challenges his 2010 conviction by asserting that the trial court (1) violated his due process rights by admitting statements that he made involuntarily, unknowingly, and unintelligently to the police; (2) violated the Sixth Amendment by allowing "clearly prejudicial hearsay" testimony from the victim's mother and sister relating to previous violence between Petitioner and the victim; and (3) denied him his right to a fair trial because the court empaneled a biased jury and later provided prejudicial jury instructions.

Judge McCarthy found that Petitioner properly exhausted his claims surrounding his statements to law enforcement but that the state's decision to admit Petitioner's statements was reasonable, consistent with clearly established federal law, and was based on a reasonable determination of the facts. The Second Department reasonably determined that Petitioner's initial statements at the scene were not the product of custodial interrogation and that the administration of *Miranda* rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966) was not required because the public safety exception applied. Petitioner's pre-*Miranda* statements in booking were reasonably determined to be spontaneous utterances, and it was not objectively unreasonable for the state court to find his statements made in the videotaped interview after he was advised of his rights to be uncoerced and an implied waiver of those rights. The state court was also reasonable in finding Petitioner's statements made at the hospital to be admissible because Petitioner had previously been provided with a *Miranda* warning and continued to voluntarily waive those rights.

However, Judge McCarthy determined that Petitioner's Sixth Amendment claim relating to testimony from the victim's mother and sister about Petitioner's previous physical altercation with the victim was procedurally barred. Petitioner's state court filings on this issue focus solely

on the trial court's application of a New York state evidentiary rule from *People v. Molineux*, 168 N.Y. 264 (1901), and there was nothing in his submissions to put the Second Department or the Court of Appeals on notice that there was a federal law aspect to this claim. Judge McCarthy found that Petitioner's fair trial claims were also procedurally barred for several reasons. First, the Second Department determined that, although the trial court erred in failing to obtain individual assurances of impartiality from the jurors during voir dire, reversal was not required because the defense counsel failed to exercise his available peremptory challenges prior to the end of jury selection as required for reversal under state law. *See* N.Y. Crim. Proc. Law § 270.20(2). This judgment rested on an independent and adequate state law ground and was therefore procedurally barred from habeas review. Second, Petitioner was procedurally barred from asserting claims related to the jury instructions because he did not fairly present the same constitutional claim in his state court filings.

Based on this analysis, Judge McCarthy recommended that the Petition be denied in its entirety and that no certificate of appealability be issued.

## DISCUSSION OF OBJECTIONS

Petitioner objects to the R & R on several grounds. First, he argues that he has a due process claim about the testimony of the victim's mother and sister that is not procedurally barred because he raised a claim that this their testimony was inadmissible hearsay in his state court appeals. Second, Petitioner contends that his statements at the scene, during the videotaped interview, and at the hospital should have been suppressed. Petitioner also asserts that the verdict sheet was fundamentally flawed and deprived him of due process in the form of a fair trial. Finally, Petitioner requests a reduced sentence because his current sentence is cruel and unusual.

The Court undertakes a *de novo* review of Petitioner's specific objections to the R & R.

## I. Testimony about Petitioner's previous violent altercations with the victim

According to Petitioner, because he raised hearsay objections to this testimony in his direct appeal, the claim that this testimony deprived him of a fair trial in violation of his due process rights is not procedurally barred.[1]

For a habeas petition to be granted, a petitioner must have exhausted his claims in state court. 28 U.S.C. § 2254(b). Exhaustion requires a prisoner to have "fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts." *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (internal quotation marks omitted). To satisfy the exhaustion requirement, the claim presented to the state court must be the "substantial equivalent" of that raised in the federal habeas petition. *Jones v. Keane*, 329 F.3d 290, 295 (2d Cir. 2003).

Although Petitioner is correct that he raised hearsay objections to the testimony from the victim's mother and sister in state court, he did not present a constitutional claim about this testimony. He only argued that the testimony was inadmissible hearsay, an argument which is insufficient to provide state courts with the required notice of a due process claim. *Compare Wright v. Duncan*, 500 F. App'x 36, 38 (2d Cir. 2012) (affirming the judgment that the petitioner's hearsay-related due process claim was procedurally barred because the petitioner did not explicitly raise a due process objection); *Dillon v. Conway*, No. 07-CV-10728(ALC)(RLE), 2016 WL 6634917, at *2 (S.D.N.Y. Nov. 9, 2016); *Jean-Baptiste v. Artus*, No. 09-CV-

---

[1] Petitioner withdrew his Sixth Amendment claims. (Pet'r's Opp'n pp. 5 – 6.)

5920(ER)(PED), 2012 WL 12906287, at *12 (S.D.N.Y. June 19, 2012); *Delesline v. Conway*, 755 F. Supp. 2d 487, 497 (S.D.N.Y. 2010); *McCoy v. Walker*, No. 99-CV-3926(RWS), 1999 WL 1191988, at *9 (S.D.N.Y. Dec. 14, 1999) (holding that the petitioner failed to exhaust his claim that the trial court allowed inadmissible hearsay because he only presented the issue to state courts on state law grounds and not as a due process violation), *with Sutton v. Herbert*, 39 F. Supp. 2d 335, 338 (S.D.N.Y. 1999) (holding that the petitioner properly exhausted his state court remedies for a hearsay claim by specifically claiming a denial of due process related to those hearsay claims in his brief to the state appellate court). Petitioner only raised his objections to the testimony as inadmissible hearsay under state law, and thus this claim is not exhausted for the purposes of habeas review.

## II. Petitioner's incriminating statements to law enforcement

When a federal court reaches the merits of a habeas petition, under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the court cannot grant the petition unless the state court decision was contrary to or involved an unreasonable application of clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1) – (2). After a *de novo* review, the Court agrees with Judge McCarthy and finds that the state court's determination that each instance of Petitioner's statements to law enforcement were admissible was not an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts.

### A. Statements to the police at the scene

Upon forcing open the door of the apartment at the scene, police officers observed a motionless woman on a couch surrounded by "a large puddle of blood," next to a male, Petitioner, who appeared to be wounded and they asked Petitioner what happened. (Trial Ct.

7

Decision & Order, p. 44, ECF No. 12-2.) Petitioner answered, "I stabbed her. She stabbed me." (*Id.*) Petitioner claims this initial statement was improperly admitted because it was made before *Miranda* and after a custodial interrogation. The trial court found that the officer's question was justified, and the Second Department affirmed, finding that the question was justified and that the initial statement was not the product of improper custodial interrogation.

A *Miranda* warning is required only if a suspect is subjected to custodial interrogation. *Parsad v. Greiner*, 337 F.3d 175, 181 (2d Cir. 2003). A person is in custody for *Miranda* purposes when there has been a restriction on his freedom. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam). To determine whether one is in custody courts first consider the circumstances surrounding the interrogation and then whether under those circumstances a reasonable person would have felt free to terminate the interrogation and leave. *Parsad*, 337 F.3d at 181 – 82. The custody component of *Miranda* shows that "police officers are not required to administer *Miranda* warnings to everyone whom they question," including suspects, but only to those who are in custody. *Mathiason*, 429 U.S. at 495.

Whether or not *Miranda* has been administered, to be admissible, a confession must be uncoerced and voluntary. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986). "[C]oercive police activity is a necessary predicate to finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Id.* A confession is involuntary when the conduct of government agents is such as to overbear one's will to resist and cause "confessions not freely self-determined." *United States v. Kaba*, 999 F.2d 47, 51 (2d Cir. 1993) (quoting *United States v. Guarno,* 819 F.2d 28, 30 (2d Cir. 1987)). In determining whether a defendant's will is overborne, courts consider a totality of the circumstances which may include the characteristics of the accused, the conditions of the interrogation, and the

conduct of law enforcement officials. *United States v. Awan*, 384 F. App'x 9, 14 (2d Cir. 2010); *Green v. Scully*, 850 F.2d 894, 901 – 02 (2d Cir. 1988).

Considering the totality of the circumstances, the Court agrees with the conclusion reached in the R & R; the state court's determination that Petitioner was not subjected to custodial interrogation and that the officers did not coerce Petitioner's confession was not unreasonable. The officer's question was not accusatory. It was directed at assessing what appeared to be a violent and potentially still-dangerous situation. *See Self v. Milyard*, No. 11-CV-00502(REB), 2012 WL 365998, at *21 (D. Colo. Feb. 2, 2012) (holding that the defendant's statements were voluntary because they were made to police officers while they were still investigating and because the officers asking the defendant about what happened was not an interrogation). As Judge McCarthy points out, there is no evidence that the officers threatened Petitioner or used physical or psychological pressure to coerce a confession. At the time of Petitioner's confession, he was not handcuffed, he had not been told that he was under arrest, and he had not been prevented from leaving his apartment. *See U.S. v. Newton*, 181 F. Supp. 2d 157, 173 – 74 (E.D.N.Y. 2002) (holding that a parolee was not subjected to custodial interrogation because, although he was handcuffed while the parole officer searched his home, he was informed that he was not under arrest and that he was handcuffed for his own safety).

Moreover, Petitioner was in his home when the officer asked him what happened. (*See* Pet'r's Mem. of Law p. 31, ECF No. 12-2); (Trial Ct. Decision & Order, pp. 44 – 45.) "*Miranda* rarely applies to an interrogation at a suspect's home" because courts are much less likely to find circumstances to be custodial when the interrogation takes place in surroundings familiar to the suspect. *Id.* at 174. Thus the state court could have reasonably found that Petitioner was not subjected to a custodial interrogation and that his confession was voluntary. Based on the

totality of the circumstances, it was not objectively unreasonable for the state court to determine that Petitioner's confession was not coerced.

## B. Statements during videotaped interview[2]

Petitioner alleges that, although he was provided with a *Miranda* warning prior to his testimony, he did not voluntarily waive his rights and his subsequent statements are inadmissible. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). According to Petitioner, his statements were involuntary because he was in a "weakened psychological and physical state," from the pain caused by his punctured lung and was unable to make a free and deliberate choice to waive his rights. (Pet'r's Opp'n pp. 10 – 11, ECF No. 17.)

The trial court held that Petitioner's statements in this interview were made after he was informed of his constitutional rights and after he knowingly and voluntarily waived those rights. Upon review of the evidence, the trial court determined that Petitioner was read, indicated that he understood, and waived his *Miranda* rights and that Petitioner was "lucid and responded appropriately to questions" and that he had the "capacity to engage in conversation and exercise his will." (Trial Ct. Decision & Order at pp. 45, 48 – 49) The trial court also found that "there is no indication that the police deliberately withheld treatment to coerce defendant into making a statement." (*Id.* at 48.) The Second Department upheld the trial court's decision.

---

[2] Petitioner does not appear to object to the R & R's determination that the state court was not unreasonable to determine that his statements made in booking, before he received the *Miranda* warning, were spontaneous and therefore admissible. In any case, this Court agrees with the conclusion reached in the R & R. Based on the record, Petitioner's booking statements were spontaneous and not the result of any type of an interrogation. "[W]here a defendant spontaneously and voluntarily makes self-incriminating statements without any prompting by law enforcement officers, his statements are admissible even if *Miranda* warnings had not yet been recited to him." *Taylor v. Connelly*, 18 F. Supp. 3d 242, 256 (E.D.N.Y. 2014) (quoting *U.S. v. Vasta*, 649 F. Supp. 974, 988 (S.D.N.Y. 1986)) (internal quotation marks omitted).

10

After a defendant is provided with a *Miranda* warning, the defendant may waive those rights if the waiver is made voluntarily, knowingly, and intelligently. *Miranda*, 384 U.S. at 444. To be voluntary, a waiver must be "the product of free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). For a waiver to have been made knowingly and intelligently, the defendant must have a "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* To satisfy these standards, the defendant only needs to be aware that "he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *Colorado v. Spring*, 479 U.S. 564, 574 (1987).

While Petitioner alleges that his waiver could not have been voluntary considering the extreme amount of pain he was in from his injury, it was not objectively unreasonable for the state court to find that Petitioners uncoerced statements after he received the *Miranda* warning established an implied waiver. Waiver may be implied where a defendant indicates an understanding of his rights coupled with "a course of conduct indicating waiver." *United States v. Murphy*, 703 F.3d 182, 194 (2d Cir. 2012) (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010)) (internal quotation marks omitted). Petitioner was given and indicated that he understood his rights under *Miranda* at the start of the videotaped interview,[3] yet he continued to answer questions. Courts have held that those circumstances, continuing to respond to questions after receiving the warning, may constitute an implicit waiver of *Miranda* rights. *Berghuis*, 560 U.S. at 385 – 86 (noting that by responding to questions from the interrogating officer after

---

[3] Petitioner was read his rights and indicated that he knew what the rights were and would speak with law enforcement until he did not want to speak any further. (*See* Pet'r's Mem. of Law p. 30, ECF No. 12-2); (Trial Ct. Decision & Order p. 45, ECF No. 12-2.)

11

receiving the *Miranda* warning, Thompkins waived his right to remain silent); *United States v. Peter*, No. 17-CR-054(NRB), 2018 WL 5282878, at *4 (S.D.N.Y. Oct. 24, 2018) (holding that Peter waived his *Miranda* rights after he signed a waiver of those rights and proceeded to answer questions); *U.S. v. Wright*, No. 10-CR-504-S-1(ADS)(ARL), 2012 WL 1132421, at *4 (E.D.N.Y. Apr. 2, 2012) (stating that the defendant waived his right to remain silent after being informed of his *Miranda* rights and then making a statement to the police).

Moreover, Petitioner's waiver of his right to remain silent was not coerced or involuntary. Although Petitioner had an injury during the interrogation, the existence of a physical injury alone is not enough to render a waiver involuntary.[4] *See United States v. Brown*, 64 F.3d 1115, 1118 (7th Cir. 2011) (holding that under the totality of the circumstances, it was clear that Brown understood and waived his rights by continuing to answer questions despite having an untreated broken arm at the time of the interrogation); *Gordon v. Mantello*, 155 F. App'x 562, 565 (2d Cir. 2005) (holding that pain from a hand injury was not enough to show that the petitioner's statements were involuntary); *Peter*, 2018 WL 5282878, at *5 (rejecting "any suggestion that Peter's physical condition at the time of his interrogation rendered his waiver or ensuing statements inherently involuntary" even though he had recently endured and been treated for a gunshot wound and was in pain); *Saunders v. Lavalley*, No. 10-CV-5896(CS)(LMS), 2014 WL 2624763, at *16 (S.D.N.Y. June 10, 2014) (rejecting the petitioner's argument that his post-

---

[4] To the extent that Petitioner claims his statements were also coerced because he had consumed alcohol at some point in the evening prior to his interrogation, that is also insufficient to invalidate his waiver of his *Miranda* rights. *See United States v. Wyche*, 307 F. Supp. 2d 453, 463 (S.D.N.Y. 2004). "Courts in this Circuit have held that '[a] statement may still be voluntarily given even when the speaker is intoxicated or under the influence of drugs, as there is no per se rule that a confession given under such circumstances is involuntary.'" *Evans v. Kirkpatrick*, No. 08-CV-6358T, 2010 WL 4174624, at *8 (W.D.N.Y. Oct. 22, 2010) (quoting *States v. Wyche*, 307 F. Supp. 2d 453, 463 (S.D.N.Y. 2004)).

*Miranda* statements were coerced because he was diabetic and in pain at the time of the interrogation). For a suspect to be so physically debilitated as to be unable to waive his rights, courts generally hold that the suspect should be essentially "incapacitated and sedated." *Berghuis v. Thompkins*, 560 U.S. 370, 387 (2010). Here, Petitioner was not incapacitated and sedated; the trial court determined that he was lucid and responding appropriately to questions. Accordingly, it was not objectively unreasonable for state court to find that Petitioner had implicitly waived his rights.

### C. Statements at the hospital

About an hour after Petitioner received his *Miranda* rights, the officers stopped the video interrogation and Petitioner was taken to St. Luke's Hospital, where he was diagnosed with a collapsed lung. Officer Karabelas was in Petitioner's room around 6:50 AM, shortly after Petitioner arrived at the hospital and asked Petitioner what had happened to his hand. Petitioner responded that he had "punched the hell out of her." (Trial Ct. Decision & Order pp. 45 – 46); (R & R p. 6.) At around 8:20 AM, Officer Pretsch entered Petitioner's room, and Petitioner told him about a previous violent incident between Petitioner and the victim that occurred when they lived in Poughkeepsie. (Trial Ct. Decision & Order, pp. 45 – 46); (R & R pp. 6 – 7.) Several hours later, Officer Karabelas reentered the room and asked Petitioner to tell him what happened the previous night. (Trial Ct. Decision & Order pp. 45 – 46); (R & R p. 7.) Petitioner stated that the victim told him she wanted to stab him, Petitioner retrieved two knives and handed her one, the victim stabbed him in the side, and he stabbed her back. (Trial Ct. Decision & Order, pp. 45 – 46); (R & R p. 7.)

The trial court held that Petitioner was lucid at the times the officers spoke with him and that he responded to questions appropriately. The Second Department affirmed.

Petitioner argues that the statements he made in the hospital were coerced, involuntary statements and were inadmissible because he continued to be in pain at the hospital and then, after 9:10 AM, was heavily medicated before surgery.

As discussed earlier, pain alone is not enough to show that a defendant's incriminating statements are involuntary. Similarly, statements made while a defendant is in pain in a hospital are not necessarily coerced; courts must continue to consider the totality of the circumstances in determining whether the defendant's will was overborne. *See, e.g., Campaneria v. Reid*, 891 F.2d 1014, 1020 (2d Cir. 1989); *King v. City of New York*, Nos. 99-CV-3669(JG), 05-CV-3247(JG), 2007 WL 959696, at *13 (E.D.N.Y. Mar. 30, 2007); *Pritchett v. Portuondo*, No. 02-CV-0824(MBM)(GWG), 2003 WL 22472213, at *6 (S.D.N.Y. Oct. 31, 2003). Courts have also found statements made after an individual has been administered medication or undergone surgery to be voluntary after applying the totality of the circumstances analysis. *See United States v. Parker*, 116 F. Supp. 3d 159, 176 (W.D.N.Y. 2015); *Brown v. Phillips*, No. 03-CV-0361(DGT), 2006 WL 656973, at *5 – 6 (E.D.N.Y. Mar. 13, 2006); *see also United States v. Cristobal*, 293 F.3d 134, 142 (4th Cir. 2002) (holding that there was no evidence that the medication given to the petitioner impacted his ability to think rationally).

The Second Circuit in *Campaneria v. Reid* applied a totality of the circumstances analysis to determine that the petitioner's statements were voluntary despite his injuries. There, the petitioner claimed that his statements were coerced because the police conducted their interrogations while he was in an intensive care unit and was in pain from a serious knife wound. *Campaneria v. Reid*, 891 F.2d 1014, 1020 (2d Cir. 1989). He also argued that he was young and had a poor command of the English language so was easily coerced by the police. *Id.* Based on the totality of the circumstances, the Second Circuit held that the petitioner's statements were not

14

coerced. *Id.* The petitioner's statements were made while he was "alert and awake," and "[a]lthough [the petitioner] suffered pain and discomfort, it was not so severe as to render him unable to make a voluntary statement or unduly susceptible to manipulation by his interrogators." *Id.* Additionally, the interrogations were relatively short, and the interrogators left to return later when the petitioner declined to be interviewed. *Id.*

The circumstances in *Campaneria* are similar to those in this case. Like Campaneria, Petitioner was alert while answering questions despite being in pain. Also, the interrogations were fairly brief; there is no indication that Petitioner endured unnecessarily prolonged or complicated interrogation in the hospital. He also, at one point, indicated to the officers that he wanted to talk. (Trial Ct. Decision & Order, p. 45.) However, unlike in *Campaneria*, Petitioner did not have difficulty understanding the English language. He had previously answered questions during the video interrogation before he was taken to the hospital, and he continued to answer questions at the hospital. Based on the totality of the circumstances, the trial court was not objectively unreasonable to determine that Petitioner's statements at the hospital were voluntary.[5]

---

[5] The Court also agrees with Judge McCarthy's determination that the state court reasonably determined that Petitioner remained under *Miranda* while he was at the hospital. The "mere passage of time" does not require the re-administration of *Miranda* warnings. Renewed warnings are not required "unless the circumstances changed so seriously that [the defendant's] answers no longer [are] voluntary." *Wyrick v. Fields*, 459 U.S. 42, 47 (1982). The Second Circuit has established that relevant factors include (1) the length of time between interrogations; (2) whether the defendant was in continuous custody; (3) and whether the focus of the interrogations remained the same. *Zapulla v. New York*, 391 F.3d 462, 474 (2d Cir. 2004). Here, Petitioner was transported to the hospital immediately following an hour-long interrogation, at the beginning of which he received a *Miranda* warning. He was also in continuous custody and the focus of the interrogation remained on Petitioner's relationship to the victim and the crime.

## III. Issues with the verdict sheet

Petitioner alleges that the verdict sheet at his trial directed the jury's verdict and thus deprived him of due process. To support this argument, Petitioner quotes his then-attorney's argument from the trial transcript. (Transcript, pp. 1225 – 26, ECF No. 12-20.) Petitioner's attorney at the time objected to the use of the word "consider" and argued that "determine" would be more appropriate.[6] (*Id.*) The attorney pointed out that the "jury is free to consider everything as they deliberate." (*Id.*)

The trial court allowed the language on the verdict sheet to remain the same, and no jurors asked questions about the verdict sheet. Nothing about the use of "consider" over "determine" in this context would have created a mandatory presumption of intent or any other issue depriving Petitioner of due process. *See Francis v. Franklin*, 471 U.S. 307, 314 (1985). Additionally, decisions about the format and language used in a verdict form are left to the discretion of the trial court. *Lore v. City of Syracuse*, 670 F.3d 127, 159–60 (2d Cir. 2012); *Ladenburg Thalmann & Co., Inc. v. Modern Cont'l Const. Holding Co., Inc.*, 408 F. App'x 401, 405, at *3 (2d Cir. 2010); *Zaratzian v. Abadir*, No. 10-CV-9049(VB), 2015 WL 5474246, at *2 (S.D.N.Y. July 8, 2015). Absent any indication that the verdict form deprived Petitioner of due process, the Court determines that the trial court's decision to not change the verdict sheet was not objectively unreasonable.

## IV. Constitutionality of Petitioner's sentence

After Petitioner was found guilty of first-degree manslaughter and third-degree criminal possession of a weapon, the court sentenced him, a second felony offender, to twenty-five years

---

[6] Specifically, the attorney argued that "[c]onsider only if not guilty of Count 1" should be "[d]etermine if not guilty of counts [sic] one." (Transcript p. 1225.)

of imprisonment and five years supervised release for his manslaughter conviction and a concurrent term of three and a half to seven years imprisonment on the criminal possession of a weapon conviction. In his objection to the R & R, Petitioner suggests that his sentence is cruel and unusual in violation of the Eighth Amendment and requests a reduced sentence.[7] Petitioner also notes that his sentence should also be reduced because he has bettered himself and worked to help others since being incarcerated. Petitioner's commitment to helping others, demonstrated through his submissions with his objection, is commendable and the Court hopes that Petitioner continues these efforts. However, personal improvement is not grounds for a reduced sentence under the Eighth Amendment.

"The Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime." *United States v. Rivera*, 546 F.3d 245, 254 – 55 (2d Cir. 2008) (internal quotation marks omitted). Petitioner's sentence for his first-degree manslaughter and third-degree criminal possession of a weapon convictions are not extreme or grossly disproportionate to the crimes. First degree manslaughter is a class B felony, and criminal possession of a weapon in the third degree is a class D felony. N.Y. Penal Law §§ 125.20 & 265.02. Under New York law, a sentence for a class B felony must be at least five years and cannot exceed twenty-five years, and a sentence for a class D felony must be at least two years and cannot exceed seven. N.Y. Penal Law § 70.02(3)(a), (c). A sentence that is consistent with these statutory requirements, like the sentence in this case, is not cruel or unusual. *See Collins v. Irvin*, No. 92-CV-5157(FB), 1995 WL 451022, at *2 (E.D.N.Y. July 19, 1995) (holding that the petitioner's sentence for first

---

[7] It is unclear whether Petitioner has exhausted his claim that his sentence was unconstitutional under the Eighth Amendment. In his state court appeals, Plaintiff did argue that his sentence was unduly harsh and excessive, and the Second Department concluded that the sentence was not excessive. Therefore, in order to provide liberal treatment for a *pro se* petitioner, the Court will consider this claim to be exhausted and will consider the merits.

17

degree manslaughter and weapons charges of was not excessive because it fell within the limits set by the New York legislature).

Petitioner concludes his request for a reduced sentence by seeking mercy from the Court and citing to *United States v. Holloway*. In *Holloway*, Judge John Gleeson writes movingly about the need to act in order to avoid or correct unjust sentences. 68 F. Supp. 3d 310, 316 – 17 (E.D.N.Y. 2014). "Doing justice . . . takes time and involves work, including careful consideration of the circumstances of particular crimes, defendants, and victims—and often the relevant events occurred in the distant past. It requires a willingness to make hard decisions, including some that will be criticized." *Id.* at 316. This Court agrees. However, the facts that resulted in a reduced sentence in *Holloway* are not applicable here. In *Holloway*, the petitioner was convicted of three counts of carjacking. For the carjacking convictions alone, the petitioner was sentenced to 151 months. *Id.* at 312. Then, because of 18 U.S.C. § 924(c) which imposes mandatory minimum sentences for the use of a firearm during the commission of a violent crime, the petitioner was sentenced to an additional forty-five years imprisonment. *Id.* at 312 – 13. The petitioner filed a motion for reconsideration, and the court requested that the United States Attorney "consider exercising her discretion to agree to an order vacating two or more of Holloway's 18 U.S.C. § 924(c) convictions." *Id.* at 314. The United States Attorney agreed, and the petitioner's sentence was reduced. *Id.*

Unlike the petitioner in *Holloway*, Petitioner was not subjected to a grossly excessive sentence under a strict statutory mandatory minimum similar to 18 U.S.C. § 924(c). Rather, Petitioner was sentenced consistently with the ranges required under New York law for the crimes of which Petitioner was convicted. Although attorneys and the entire justice system must avoid the "easy route" and the assumption that there is "nothing we can do" about excessive

sentences, Petitioner's sentence is not excessive. *Id.* at 316. In addition to work and "careful consideration of the circumstances of particular crimes," 68 F. Supp. 3d at 316, doing justice requires equitable application of the law. Petitioner's sentence was consistent with the sentencing range set by the New York legislature, and there are no other factors which would render his sentence cruel or unusual. Therefore, the Second Department was not unreasonable in refusing to reduce Petitioner's sentence.

## CONCLUSION

For these reasons, the Court adopts Judge McCarthy's R & R in its entirety. The petition for a writ of habeas corpus is therefore DENIED. The Clerk of Court is directed to enter judgment accordingly, close the case, mail a copy of this Order to Petitioner and show proof of service on the docket.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2); *Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005); *Lozada v. United States*, 107 F.3d 1011, 1017 (2d Cir. 1997), *abrogated on other grounds by United States v. Perez*, 129 F.3d 225, 259 – 60 (2d Cir. 1997). The Court certifies pursuant to 18 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

Dated: February 26, 2019
      White Plains, New York

SO ORDERED:

_____
Nelson S. Román
United States District Judge